Uploaded: 2025DEC29 10:50 Filed By ABANKS on behalf of Bar# 94012 PPENTONY Reference: EF 189107
eFiled: 2025DEC29 NEWPORT NEWS CC KLSHAW at 2025DEC29 15:44 CL25072538-00

Case 4:26-cv-00083-AWA-LRL    Document 1-1    Filed 06/03/26    Page 1 of 15 PageID# 6

**EXHIBIT A**

tabbies

**VIRGINIA:**

## IN THE CIRCUIT COURT OF NEWPORT NEWS

| | |
|---|---|
| **MADISON CUPP,** | : |
| **Plaintiff,** | : |
| **v.** | : **CASE NO.:** |
| **DELTA AIR LINES, INC., and ENDEAVOR AIR, INC.,** | : |
| **Defendants.** | : |

## COMPLAINT

COMES NOW the Plaintiff, Madison Cupp, by counsel, and alleges as follows:

1. Madison Cupp resides in Paragould, Arkansas.

2. Madison Cupp's father, Nicolas Cupp, is a disabled veteran of the United States Army.

3. Madison Cupp's mother, Sheila Cupp, is the caregiver for Nicholas Cupp.

4. Defendant Delta Air Lines, Inc., (hereafter "Delta Air Lines") is a Delaware corporation which is authorized to transact business in Virginia, which transacts business in Virginia, and which caused harm by tortious conduct in Virginia.

5. At all material times, Defendant Delta Air Lines was a common carrier.

6. Defendant Endeavor Air, Inc., (hereafter "Endeavor Air") is a Georgia corporation which is authorized to transact business in Virginia, which transacts business in Virginia, and which caused harm by tortious conduct in Virginia.

7. At all material times, Defendant Endeavor Air was a common carrier and was a wholly owned subsidiary of Defendant Delta Air Lines.

8.    At all material times, Defendant Delta and Defendant Endeavor acted jointly to provide airline flights from Hartsfield-Jackson Atlanta International Airport in Atlanta, Georgia, to Newport News-Williamsburg International Airport in Newport News, Virginia.

9.    At all material times, Cheryl Thomas was an agent and employee of Defendant Delta Air Lines and Defendant Endeavor Air and was acting in the course and scope of said agency and employment.  In the course of her agency and employment, Cheryl Thomas committed tortious acts in the Commonwealth of Virginia.

10.    At all material times, Derek Palazzone was an agent and employee of Defendant Delta Air Lines and Defendant Endeavor Air and was acting in the course and scope of said agency and employment.  In the course of his agency and employment, Derek Palazzone committed tortious acts in the Commonwealth of Virginia.

11.    Defendant Delta Air Lines requires its employees to report to managers, supervisors, or local authorities, as appropriate, any passenger believed to be engaged in human trafficking activities or the sexual exploitation of children.

12.    According to the Trafficking Victims Protection Act of 2000, human trafficking is defined as: "(A) sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age; or (B) the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery."

13.    Defendant Delta Air Lines claims that it has trained over 80,000 employees to identify and report human trafficking, and also claims to have provided specific training to all its flight

crew members on the procedures to be followed if witnessing suspected indicators of trafficking in flight and in the airport.

14. Defendant Delta Air Lines failed to properly train its employee, Cheryl Thomas, to identify and report human trafficking and sexual exploitation.

15. Defendant Delta Air Lines failed to provide a sufficient protocol for Cheryl Thomas and Derek Palazzone to investigate or report suspected human trafficking and sexual exploitation.

16. On December 18, 2019, Nicholas Cupp, Sheila Cupp, and Madison Cupp, along with Sheila Cupp's parents, Edgar and Kathy Miller, were customers of Defendant Delta Air Lines and were flying on a Delta Air Lines trip from Memphis, Tennessee, to Newport News, Virginia. The purpose of the trip was to attend the graduation from the United States Coast Guard's A School of Austin Cupp, Nicholas and Sheila's son and Madison's older brother.

17. Plaintiff's mother booked their flight through Defendant Delta Air Lines and, in so doing, provided information concerning their family relationship to Defendant Delta Air Lines. The tickets for the trips of Plaintiff, her father, and her mother were purchased at the same time, in the same transaction.

18. On December 18, 2019, the Cupp family checked in together with Defendant Delta Air Lines in Memphis, Tennessee, with no incident, as they were related, law-abiding, photo identification carrying paying passengers on a domestic flight with good intent.

19. At all times, Nicholas Cupp was in possession of valid photo identification.

20. At all times, Sheila Cupp was in possession of valid photo identification.

21. At all times, Madison Cupp was in possession of valid photo identification in the form of a military identification card.

22. The boarding passes Defendant Delta Air Lines issued to the Cupp family showed identical PNR numbers.

23. After checking in on December 18, 2019, the Cupp family passed through all Transportation Security Administration checkpoints in Memphis, Tennessee, without incident. This was because all members of the Cupp family were related, law-abiding, photo identification-carrying paying passengers on a domestic flight with good intent, and the TSA had no reason to flag or detain them. Defendants were therefore aware that the Cupp family was related, possessed valid photo identification, had been checked by TSA, and had boarding passes with identical PNR numbers, and Defendants also possessed personal information and financial information provided by the Cupps at the time of booking.

24. The Cupp family boarded a Delta Air Lines flight number DL1499 in Memphis, Tennessee, without incident.

25. The Cupp family flew on Delta Air Lines flight number DL1499 from Memphis, Tennessee, to Atlanta, Georgia, without incident.

26. In Atlanta, Georgia, the Cupp family boarded a Delta Air Lines flight number DL5002, heading for Newport News-Williamsburg International Airport in Newport News, Virginia, without incident.

27. At every point of this trip, Plaintiff was traveling voluntarily with her family for family purposes.

28. Shortly before arrival at Newport News, the plane encountered turbulence.

29. Plaintiff Madison Cupp, then thirteen years old, was scared by the turbulence and began crying. Her father, Nicholas Cupp, was sitting beside her and comforted her.

30. Nicholas Cupp comforted his scared daughter as any good father would do under the circumstances, and Plaintiff was not harmed or abused in any way by his actions.

31. While Nicholas Cupp was comforting Plaintiff, Plaintiff's grandparents were sitting directly in front of Plaintiff and her father, and Plaintiff's mother was seated just across the aisle from Plaintiff and her father.

32. Unbeknownst to Plaintiff and her family, Cheryl Thomas wrongly and recklessly concluded that Nicholas Cupp was human trafficking his own daughter, Madison Cupp.

33. This conclusion was false. Plaintiff was not being trafficked and instead was traveling voluntarily with her family to participate in a family event related to her brother's service in the United States Coast Guard.

34. Unbeknownst to Plaintiff and her family, Cheryl Thomas contacted the captain of the flight and reported that Nicholas Cupp was trafficking Plaintiff. Cheryl Thomas specifically requested a law enforcement response and specifically requested that Plaintiff be separated from her family. Cheryl Thomas did not report that Nicholas Cupp was Plaintiff's father. The flight captain then passed this information to Derek Palazzone, the Delta Air Lines station manager in Newport News. Derek Palazzone undertook no action to determine the veracity of the report or the relationship between Nicholas Cupp and Plaintiff. Derek Palazzone then phoned the police.

35. The actions of Cheryl Thomas and Derek Palazzone, including contacting law enforcement in this situation with the intent of separating Plaintiff from her family, violated Delta's training, protocols, policies, and procedure for reporting suspected human trafficking.

36. Cheryl Thomas' report was entirely false and without probable cause and was the foreseeable result of Defendant Delta Air Lines' mandatory reporting policy combined with its

insufficient and inadequate training in properly recognizing and handling suspected abuse and/or trafficking situations.

37.    At some point in time while the plane was still in the air, Cheryl Thomas supplemented her initial, false report of human trafficking by also alleging sexual assault. Specifically, Cheryl Thomas reported that Nicholas Cupp had been touching Plaintiff "inappropriately" and was sexually abusing her.

38.    This report, too, was entirely false and without probable cause. Plaintiff was not sexually assaulted by her father; rather, she was comforted by her father at a time when she was nervous about experiencing turbulence for the first time and at a time when she was literally surrounded by other family members.

39.    Unbeknownst to Plaintiff and her family, as a result of Cheryl Thomas' false and unsubstantiated report of abuse and human trafficking and Defendant Delta Air Lines' mandatory reporting policy combined with its insufficient and inadequate training in properly recognizing and handling suspected abuse and/or trafficking situations and Derek Palazzone reporting the matter to law enforcement without making even the slightest effort to determine the truth of the matter, armed law enforcement officers mobilized to meet Delta Air Lines flight number DL5002 at the Newport News-Williamsburg International Airport.

40.    As a direct result of Cheryl Thomas' false and unsubstantiated report of abuse and human trafficking and Defendant Delta Air Lines' mandatory reporting policy, combined with its insufficient and inadequate training in properly recognizing and handling suspected abuse and/or trafficking situations and Derek Palazzone reporting the matter to law enforcement without making even the slightest effort to determine the truth of the matter, armed law enforcement officers boarded the Delta Air Lines aircraft when it landed at the Newport News-Williamsburg

International Airport. Cheryl Thomas repeated her false and unsubstantiated claims of abuse and human trafficking to one or more of the armed law enforcement officers.

41. As the Cupp family began to leave the aircraft, Cheryl Thomas pointed Plaintiff's father, Nicholas Cupp, out to one of the armed law enforcement officers who had boarded the plane.

42. As a direct result of Cheryl Thomas' false and unsubstantiated report of abuse and human trafficking and Defendant Delta Air Lines' mandatory reporting policy combined with its insufficient and inadequate training in properly recognizing and handling suspected abuse and/or trafficking situations and Derek Palazzone reporting the matter to law enforcement without making even the slightest effort to determine the truth of the matter, armed law enforcement officers physically separated Plaintiff from her parents without warning, physically took Nicholas Cupp into investigative detention and Mirandized him, and physically prevented Sheila Cupp from communicating with or supporting Plaintiff.

43. While Plaintiff was separated from her family, armed law enforcement officers interrogated her about whether her father had ever hurt her or touched her inappropriately. Plaintiff was upset and scared and was crying.

44. Armed law enforcement officers interrogated Nicholas as a result of Cheryl Thomas' false and unsubstantiated report of abuse and human trafficking, Derek Palazzone reporting the matter to law enforcement without making even the slightest effort to determine the truth of the matter, and Defendant Delta Air Lines' mandatory reporting policy, combined with its insufficient and inadequate training in properly recognizing and handling suspected abuse and/or trafficking situations. The interrogation included questions like whether he had ever touched his daughter in a sexual manner, and included the threat to handcuff him. The interrogation occurred in a public portion of the airport where members of the public witnessed the interrogation, as Delta Air Lines

and/or Endeavor Air failed to take the slightest action to protect its innocent passengers from the consequences of their own employees' false allegations.

45.    The law enforcement officers ultimately determined that there was no probable cause to charge or arrest Nicholas Cupp.

46.    The actions of Defendant Delta Air Lines and Defendant Endeavor Air and their agents Cheryl Thomas and Derek Palazzone caused severe and permanent harm to Nicholas Cupp and Plaintiff.

## Count 1 – Negligence by Defendant Delta Air Lines and Defendant Endeavor Air Causing Harm to Madison Cupp

47.    As a common carrier, Defendant Delta Air Lines and its subsidiary Defendant Endeavor Air owed Madison Cupp the highest degree of practical care.

48.    Defendant Delta Air Lines and its subsidiary Defendant Endeavor Air negligently, willfully, wantonly, recklessly, and with gross negligence breached their duties by, *inter alia*:

    a.    Failing to train Cheryl Thomas in the proper manner of identifying sexual assault;

    b.    Failing to train Cheryl Thomas in the proper manner of identifying human trafficking;

    c.    Failing to train Cheryl Thomas in the proper manner of investigating possible sexual assault without making false, public, and harmful accusations against passengers;

    d.    Failing to train Cheryl Thomas in the proper manner of investigating possible human trafficking without making false, public, and harmful accusations against passengers;

e.  Mandating that employees report possible human trafficking without implementing any simple common sense due diligence procedures to avoid making false, public, and harmful accusations against passengers;

f.  Deputizing Cheryl Thomas by giving her and/or those in her chain of command, , authority to initiate law enforcement interdiction of passengers with improper training and with no oversight to check the conduct of Cheryl Thomas, her conclusions, or to ensure that innocent passengers would not be improperly identified as sexual abusers or human traffickers;

g.  Incentivizing its own employees to report human trafficking and/or sexual abuse without either proper training to identify these behaviors and/or without any oversight within the company to check the work of the reporting employee or to otherwise guard against false reports; and

h.  Willfully disregarding the personal identification information that had already been supplied to Defendant Delta Air Lines and Defendant Endeavor Air in the ticket purchasing process, through Defendants' own boarding requirements, including identification checks, and TSA checks, all of which were available to Defendant Delta Air Lines and Defendant Endeavor Air without the intervention of law enforcement.

49.  Defendant's agent and employee Cheryl Thomas negligently, willfully, wantonly, recklessly, in bad faith, and with gross negligence breached her duties by, *inter alia*:

a.  Failing to utilize the proper method for recognizing potential human trafficking;

b.  Failing to utilize the proper method for investigating potential human trafficking;

c.  Failing to utilize the proper method for reporting potential human trafficking;

    d.      Failing to utilize the proper method for recognizing potential sexual abuse;

    e.      Failing to utilize the proper method for investigating potential sexual abuse;

    f.      Failing to utilize the proper method for reporting potential sexual abuse;

    g.      Failing to exercise due diligence with the information available to her through her employment with Delta Air Lines to verify the Cupps as family members before initiating a human trafficking alert or contacting law enforcement;

    h.      Violating her employer's training, policies, and procedures; and

    i.      Specifically seeking a law enforcement response in order to ensure that Plaintiff was separated from her family.

50.    Defendant's agent and employee Derek Palazzone negligently, willfully, wantonly, recklessly, in bad faith, and with gross negligence breached his duties by, *inter alia*:

    a.      Failing to utilize the proper method for recognizing potential human trafficking;

    b.      Failing to utilize the proper method for investigating potential human trafficking;

    c.      Failing to utilize the proper method for reporting potential human trafficking;

    d.      Failing to utilize the proper method for recognizing potential sexual abuse;

    e.      Failing to utilize the proper method for investigating potential sexual abuse;

    f.      Failing to utilize the proper method for reporting potential sexual abuse; and

    g.      Failing to exercise due diligence with the information available to him through his employment with Delta Air Lines to verify the Cupps as family members before initiating a human trafficking alert or contacting law enforcement; and

    h.      Violating his employer's training, policies, and procedures.

51.    Cheryl Thomas and Derek Palazzone were negligent, grossly negligent, and reckless in their false and erroneous reporting that Plaintiff was engaged in human trafficking and sexual

abuse. As the employer or employers of Cheryl Thomas and Derek Palazzone, Defendants Delta Air Lines and its subsidiary Defendant Endeavor Air are vicariously liable for Cheryl Thomas' conduct and Derek Palazzone's conduct.

52.     As a direct and proximate result of the Defendants' negligence, recklessness, and gross negligence, Plaintiff suffered physical harm in the form of stomach aches, vomiting, and other sequelae of severe emotional trauma, including but not limited to a fear of interacting with her father in public should another false accusation be made. The emotional distress suffered by Plaintiff was severe. Every aspect of her life was fundamentally and severely altered. Prior to this incident, Plaintiff was outgoing, enjoyed school, played basketball on a team coached by her father, was affectionate with the males in her family, and was carefree. After the incident, Plaintiff stopped wanting to go to school, refused to show any affection to males, was scared that her family would be taken away from her or be falsely accused again, stopped playing basketball, stayed at home, and suffered from anxiety and worry.

**Count 2 — Intentional Infliction of Emotional Distress Causing Harm to Madison Cupp**

53.     Plaintiff re-allege paragraphs 1 through 52.

54.     Cheryl Thomas' false report of sexual assault and human trafficking was reckless. Not only was the report false, but it also was based upon insufficient cause, was made without any type of common sense analysis, was outlandish in light of the other family members seated around Madison Cupp made even though no other Delta Air Lines or Endeavor Air or Transportation Security Administration official who had observed the Cupp family that day had reached a similar conclusion, and was made in violation of the training and education provided on this subject by Defendant Delta Air Lines and Defendant Endeavor Air. The fact that Cheryl Thomas apparently supplemented her initial report of human trafficking to include allegations sexual abuse, that she

specifically asked for a law enforcement response despite her employer's policy to the contrary, and that she had the specific intent to have Plaintiff separated from her family by law enforcement demonstrates that Cheryl Thomas was driven by a motivation to ensure that Plaintiff was singled out and treated in the way that she was.

55. Cheryl Thomas' conduct in recklessly making a false report of sexual assault and human trafficking against a disabled veteran comforting his scared daughter during turbulence on a flight, while surrounded by his wife, his father-in-law, and his mother-in-law, all of whom booked their flights together, checked in together, passed through TSA screening together, and flew on a prior connecting flight together, leading to the surprise detention of members of the family by armed law enforcement officers, was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Cheryl Thomas ignored her training and protocols for investigating and reporting potential incidents, and instead concluded on her own, based upon innocuous behavior, that Nicholas Cupp was a human trafficker and sex abuser and that, consequently, Plaintiff should be separated from her family and questioned alone by law enforcement. Cheryl Thomas's bad faith, recklessness, and malice are demonstrated by the lack of probable cause, her failure to apologize, and walking right past Plaintiff in the airport after this ordeal without even looking at her.

56. Cheryl Thomas' bad faith, reckless, and malicious conduct led to Plaintiff being separated from her family and interrogated by armed law enforcement officers who were acting upon the false reports of Cheryl Thomas and Derek Palazzone. There is a causal connection between the bad faith, reckless, and malicious conduct of Defendants' agents and the emotional distress suffered by Plaintiff.

57.   As a direct and proximate result of the Defendants' negligence, recklessness, and gross negligence, Plaintiff suffered physical harm in the form of her stomach hurting, vomiting, and other sequelae of severe emotional trauma, including but not limited to a fear of interacting with her father in public should another false accusation be made. The emotional distress suffered by Plaintiff was severe. Every aspect of her life was fundamentally and severely altered. Prior to this incident, Plaintiff was outgoing, enjoyed school, played basketball on a team coached by her father, was affectionate with the males in her family, and was carefree. After the incident, Plaintiff stopped wanting to go to school, refused to show any affection to males, was scared that her family would be taken away from her or be falsely accused again, stopped playing basketball, stayed at home, and suffered from anxiety and worry.

### Count 3 – False Imprisonment

58.   Plaintiffs re-allege paragraphs 1 through 57.

59.   Defendants' aforementioned acts of negligence, gross negligence, and recklessness culminated in Plaintiff being detained and questioned by law enforcement officers, whom Defendants' agents and employees Cheryl Thomas and Derek Palazzone had misled about the actual circumstances.

60.   Upon being separated from her family aboard an aircraft and questioned by armed law enforcement officers at the behest of, and due to the negligence, gross negligence, and recklessness of the Defendants, jointly and severally, Plaintiff's freedom of movement was restricted, and she reasonably believed he had to submit to the authority of armed law enforcement officers.

61.   Plaintiff's false imprisonment and unlawful detention was without probable cause, owing itself only to the false allegations negligently, grossly negligently, and recklessly made by Cheryl

Thomas and Delta's (and/or Endeavor's) failure to properly train her and implement internal checks and/or due diligence protocols to prevent false allegations of human trafficking and sexual abuse, as previously described in this Complaint. The foreseeable consequence of this false allegation against her father being transmitted to law enforcement was to cause law enforcement to take custody of Plaintiff and separate her from her family, resulting in her false imprisonment as a result of the Defendants' actions.

62. Plaintiff's separation from her family by law enforcement was Cheryl Thomas' explicit goal in reporting this matter to law enforcement.

63. As a direct and proximate result of the Defendants' negligence, recklessness, and gross negligence, Plaintiff suffered physical harm in the form of her stomach hurting, vomiting, and other sequelae of severe emotional trauma, including but not limited to a fear of interacting with her father in public should another false accusation be made. The emotional distress suffered by Plaintiff was severe. Every aspect of her life was fundamentally and severely altered. Prior to this incident, Plaintiff was outgoing, enjoyed school, played basketball on a team coached by her father, was affectionate with the males in her family, and was carefree. After the incident, Plaintiff stopped wanting to go to school, refused to show any affection to males, was scared that her family would be taken away from her or be falsely accused again, stopped playing basketball, stayed at home, and suffered from anxiety and worry.

WHEREFORE, Plaintiff, Madison Cupp, by counsel, demands judgment against the Defendants, jointly and severally, for compensatory damages in the amount of TWO MILLION DOLLARS ($2,000,000.00), or such greater amount as may be warranted by the evidence at trial, and THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000.00) in punitive damages, plus interest from the date of injury pursuant to Va. Code Ann. § 8.01-382 (1950, as amended),

together with all costs, expenses, fees, and all such further relief as may be recoverable under

applicable law.

Plaintiff demands a trial by jury.

Madison Cupp
Plaintiff, by counsel

William E. Johnson (VSB No. 27810)
The Johnson Law Center
6558 Main Street, Suite 6
Gloucester, Virginia 23061
(804) 694-1111
(804) 694-1100 Facsimile

Cory R. Ford (VSB No. 68153)
Peter A. Pentony (VSB No. 94012)
WILLIAMSFORD
101 Loudoun Street, S.W.
Leesburg, Virginia 20175
(703) 777-6535
(703) 777-6963 Facsimile

*Counsel for Plaintiff*